Case 4:22-cv-00580   Document 32   Filed on 03/30/23 in TXSD   Page 1 of 18

United States District Court
Southern District of Texas
**ENTERED**
March 30, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY, | § § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:22-CV-580 |
| | § | |
| WHITFIELD & BREITIGAM ENTERPRISES, LLC, *et al.*, | § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This is an insurance coverage dispute involving a commercial general liability policy ("the policy"). Two insureds under the policy, Whitfield & Breitigam Enterprises, LLC d/b/a End Zone Sports Bar & Grill ("End Zone") and William Whitfield ("Whitfield"), have been sued (along with two other defendants) in Texas state court by Angela Trevino ("Trevino"). (Dkt. 19-3). That lawsuit ("the state court suit") is ongoing and is currently set for trial in January of 2024. *See* docket for case number 2018-44506 in the District Court for the 80th Judicial District of Harris County, Texas. In the state court suit, Trevino alleges that she was injured when an all-terrain vehicle ("ATV") crashed during an event organized by Whitfield to promote End Zone and another bar, The Wildcatter Saloon ("Wildcatter"). (Dkt. 19-3 at pp. 4–5).

In this lawsuit, Mesa Underwriters Specialty Insurance Company ("Mesa"), the insurance carrier that issued the policy, seeks a judicial declaration that it need not pay defense costs or provide indemnity for End Zone or Whitfield in the state court suit. Mesa

and Trevino have filed cross-motions for summary judgment. Trevino's motion (Dkt. 21) is **DENIED**. Mesa's motion (Dkt. 18) is **GRANTED** as to the duty to defend and **DENIED** as to the duty to indemnify. This case is **STAYED** and **ADMINISTRATIVELY CLOSED** until final judgment is entered in the state court suit. At that time, the parties may reurge their motions on the duty to indemnify.

## I. BACKGROUND

End Zone bought the policy from Mesa, and End Zone and Whitfield now seek defense costs and indemnity under the policy in the state court suit.

### a. The relevant language of the policy

The policy provides that Mesa:

> will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [Mesa] will have the right and duty to defend the insured against any "suit" seeking those damages. However, [Mesa] will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
> Dkt. 1-2 at p. 33.

The named insured on the policy is listed as "End Zone Sports Bar & Grill; Whitfield & Breitigam Enter LLC, dba[.]" (Dkt. 1-2 at p. 3). The policy specifies that:

> [i]f you are designated in the Declarations as [a] limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.
>
> . . .
>
> Each of the following is also an insured:
>
> . . .

> [Y]our "employees", other than . . . your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.
> Dkt. 1-2 at pp. 41–42.

The policy includes a liquor liability exclusion, which provides that:

> [t]his insurance does not apply to:
>
> . . .
>
> "Bodily injury" or "property damage" for which any insured may be held liable by reason of:
>
> (1) Causing or contributing to the intoxication of any person, including causing or contributing to the intoxication of any person because alcoholic beverages were permitted to be brought on your premises, for consumption on your premises;
>
> (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
>
> (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.
> Dkt. 1-2 at p. 52.

The liquor liability exclusion applies to insureds who "[m]anufacture, sell or distribute alcoholic beverages[.]" (Dkt. 1-2 at p. 52).

### b. Trevino's lawsuit

In the state court suit, Trevino alleges that she was injured when an ATV driven by Travis Daniel ("Daniel") rolled onto its side while Trevino was riding on it. (Dkt. 19-3 at p. 4). At the time, Trevino and Daniel were attending an event organized by Whitfield "intended on promoting both" Wildcatter and End Zone. (Dkt. 19-3 at p. 4). The event was held at Wildcatter; and "Whitfield invited friends, other people of the public, business colleagues, and employees of both" Wildcatter and End Zone. (Dkt. 19-3 at p. 4).

According to Trevino's pleading in the state court suit, Whitfield "managed [End Zone]" and "also managed and/or owned and controlled operations at [Wildcatter]." (Dkt. 19-3 at p. 4). The ATV ride on which Trevino was injured was "part of the event's promotion of the two bars" and was set up by Whitfield and Daniel. (Dkt. 19-3 at p. 5). Although it is unclear what Daniel's job was, Trevino's state-court pleading says that Daniel was an employee of Whitfield, End Zone, and "Whitfield & Pool, LLC[.]" (Dkt. 19-3 at pp. 4, 7). Trevino alleges that Wildcatter "chose to have an 'open bar'" at the promotional event "so that people could drink for free." (Dkt. 19-3 at p. 4). Trevino further alleges that Daniel "was among those who were drinking alcohol at the open bar during the event prior to operating the ATV." (Dkt. 19-3 at pp. 4–5).

Trevino has sued Whitfield; End Zone; Daniel; and Whitfield & Pool, LLC for negligence. (Dkt. 19-3 at pp. 5–7). Trevino contends that Whitfield and End Zone were negligent in, among other things, "failing to exercise the degree of care that would be exercised by a very cautious and prudent company under the same or similar circumstances; . . . allowing Travis Daniel to operate an ATV under the circumstances; . . . allowing the ATV driver and passengers to ride on the ATV under the circumstances; and . . . negligently entrusting the ATV to Daniel." (Dkt. 19-3 at pp. 6–7).

The state court suit is currently set for trial in January of 2024. *See* docket for case number 2018-44506 in the District Court for the 80th Judicial District of Harris County, Texas.

### c. This lawsuit

In this lawsuit, Mesa seeks a declaration that it need not defend or indemnify Whitfield or End Zone in the state court suit. (Dkt. 1 at p. 8). Among other reasons, Mesa contends that the policy's liquor liability exclusion bars coverage for the state court suit. (Dkt. 1 at p. 6). Mesa and Trevino have filed cross-motions for summary judgment. (Dkt. 18; Dkt. 21).

## II.    SUMMARY JUDGMENTS

Federal Rule of Civil Procedure 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the Court must determine whether the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Id*. at 322–23.

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an absence of a genuine issue of material fact. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The movant, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The movant may meet its burden by pointing out the absence of evidence supporting the non-movant's case. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

If the movant meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from those facts must be reviewed in the light most favorable to the non-movant. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when both parties have submitted evidence of contradictory facts." *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (citation and quotation marks omitted). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A & B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the non-movant must present specific facts which show the existence of a genuine issue concerning every essential component of its case. *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003). In the absence of any proof, the Court will not assume that the non-movant could or would prove the necessary facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.

1994) (en banc). And Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment; evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

### III. THE COVERAGE DISPUTE

Mesa is entitled to summary judgment on its duty to defend Whitfield and End Zone, as the allegations in the state court suit fall within the scope of the policy's liquor liability exclusion. However, on this record the Court cannot say that the same reasons that negate the duty to defend likewise negate any possibility that Mesa will ever have to indemnify Whitfield and End Zone in the state court suit. Accordingly, the question of whether Mesa has a duty to indemnify Whitfield and End Zone in the state court suit will be deferred until the conclusion of the state court suit.

#### a. The duty to defend

Under Texas law, insurance policies are construed in accordance with the same rules as contracts generally. *Canutillo Independent School Dist. v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, 99 F.3d 695, 700 (5th Cir. 1996). A court's primary concern in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument. *Federal Insurance Co. v. Northfield Insurance Co.*, 837 F.3d 548, 552 (5th Cir. 2016). In determining whether an insurer has a duty to defend an insured against a third-party complaint, Texas courts follow the "eight corners" rule. *Canutillo*, 99 F.3d at 701. The eight corners rule determines whether the insurer has a duty to defend by

comparing the allegations in the third party's pleadings with the language of the insurance policy. *National Union Fire Insurance Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). "If a petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit against its insured." *Id.*[1] When applying the eight corners rule, "the court must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged." *Id.* (quotation marks omitted). In addition to the factual allegations, a court must consider "any reasonable inferences that flow from the facts alleged." *Liberty Mutual Insurance Co. v. Graham*, 473 F.3d 596, 601 (5th Cir. 2006).

The insured bears the initial burden of showing that the claim against it is potentially within the insurance policy's scope of coverage. *Federal Insurance*, 837 F.3d at 552. If the insurer relies on a coverage exclusion to deny that it has a duty to defend, then it bears the burden of proving the applicability of the exclusion. *Id.* at 552–53. Once the insurer proves that an exclusion applies, then the burden shifts back to the insured to show that the claim

---

[1] The Texas Supreme Court recently reaffirmed that, "in most cases, whether a duty to defend exists is determined under Texas's longstanding eight-corners rule." *Monroe Guaranty Insurance Co. v. BITCO General Insurance Corp.*, 640 S.W.3d 195, 204 (Tex. 2022). The Texas Supreme Court added, however, that:

> if the underlying petition states a claim that could trigger the duty to defend, and the application of the eight-corners rule, due to a gap in the plaintiff's pleading, is not determinative of coverage, Texas law permits consideration of extrinsic evidence provided the evidence (1) goes solely to an issue of coverage and does not overlap with the merits of liability, (2) does not contradict facts alleged in the pleading, and (3) conclusively establishes the coverage fact to be proved.
> *Id.*

In this case, the eight corners rule is sufficient to determine whether a duty to defend exists, and no party has presented extrinsic evidence as contemplated by *Monroe*.

falls within an exception to the exclusion. *Federated Mutual Insurance Co. v. Grapevine Excavation Inc.*, 197 F.3d 720, 723 (5th Cir. 1999). If there is doubt as to whether a third party's allegations against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor. *Federal Insurance*, 837 F.3d at 552. Similarly, coverage exclusions are construed narrowly, and any ambiguities are resolved in the insured's favor. *Id.* at 553.

### i. *The liquor liability exclusion*

In arguing that it has no duty to defend End Zone or Whitfield, Mesa contends that the policy's liquor liability exclusion applies. The Court agrees.

The policy's liquor liability exclusion provides that:

> [t]his insurance does not apply to:
>
> . . .
>
> "Bodily injury" or "property damage" for which any insured may be held liable by reason of:
>
> (1) Causing or contributing to the intoxication of any person, including causing or contributing to the intoxication of any person because alcoholic beverages were permitted to be brought on your premises, for consumption on your premises;
>
> (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
>
> (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.
> Dkt. 1-2 at p. 52.

The liquor liability exclusion applies to insureds who "[m]anufacture, sell or distribute alcoholic beverages[.]" (Dkt. 1-2 at p. 52).

No one disputes that the liquor liability exclusion covers End Zone, the policy's named insured, as End Zone sells alcoholic beverages. However, in opposing Mesa's summary judgment motion, Trevino, End Zone, and Whitfield contend that Trevino's allegations in the state court suit do not implicate the liquor liability exclusion because:

> the meet and greet social event took place at [Wildcatter] and if anyone served alcohol on the night of the alleged injuries, it was not End Zone, it was [Wildcatter]. Regardless, it is not alleged that intoxication caused or contributed to the alleged ATV accident or the alleged injuries.
> Dkt. 20 at p. 9.

The Court finds the arguments set forth by Trevino, End Zone, and Whitfield unpersuasive.

### —**Intoxication**

Taking the arguments in reverse order, Trevino, End Zone, and Whitfield contend that the liquor liability exclusion does not apply because Trevino's state-court pleading does not specifically allege "that intoxication caused or contributed to the alleged ATV accident or the alleged injuries." (Dkt. 20 at p. 9). The Court disagrees. Trevino alleges that Daniel "dr[ank] alcohol at the open bar during the event prior to operating the ATV." (Dkt. 19-3 at pp. 4–5). Under Texas law, it can and must be inferred in these circumstances that alcohol impaired Daniel's ability to drive the ATV, even if that inference makes a coverage exclusion applicable. *Cf. Allstate Insurance Co. v. Hallman*, 159 S.W.3d 640, 644–45 (Tex. 2005) (reversing the court of appeals and concluding that a coverage exclusion applied based on an inference drawn from the pled facts) ("The court of appeals, noting that courts

are limited to the language in the pleadings and the policy when determining an insurer's duty to defend, concluded that the lease failed to meet the profit motive requirement. Admittedly, the pleadings do not contain any reference to Hallman's pecuniary interest in the lease, nor do they expound on her motive for leasing her property. However, we conclude that, in this circumstance, a profit motive can be inferred from the nature of the activity. One generally does not allow limestone mining with dynamite blasting to occur on his or her property without some expectation of remuneration or monetary gain.") (citation omitted); *see also Graham*, 473 F.3d at 601 (citing *Hallman*) ("Texas law requires us to consider the allegations in the complaint along with any reasonable inferences that flow from the facts alleged.").

Moreover, Texas courts have emphasized that the liquor liability exclusion "plainly and specifically negates *coverage for liability arising out of the business of selling or serving alcohol.*" *Abe's Colony Club, Inc. v. C&W Underwriters, Inc.*, 852 S.W.2d 86, 89 (Tex. App.—Fort Worth 1993, writ denied) (emphasis in *Abe's*); *see also Paradigm Insurance Co. v. Texas Richmond Corp.*, 942 S.W.2d 645, 649–51 (Tex. App.—Houston [14th Dist.] 1997, writ denied); *Acceptance Insurance Co. v. Walkingstick*, 887 F. Supp. 958, 962–63 (S.D. Tex. 1995) ("This exclusionary clause is clear and unambiguous. It bars coverage of all claims arising out of the business of selling or serving alcohol.") (collecting cases; citations omitted). Claims that a policyholder who was in the business of selling or serving alcohol sold or served alcohol to a person who then caused injury by driving a vehicle in an unsafe manner fall squarely within the purview of the liquor liability exclusion as Texas courts have construed it. *See, e.g., Paradigm*, 942 S.W.2d at 651; *Abe's*,

852 S.W.2d at 89; *Thornhill v. Houston General Lloyds*, 802 S.W.2d 127, 130 (Tex. App.—Fort Worth 1991, no writ). Accordingly, the fact that Trevino did not plead Daniel's particular level of intoxication does not remove the claims against Whitfield and End Zone from the reach of the liquor liability exclusion; ordinary commercial general liability policies containing liquor liability exclusions simply do not cover this type of claim. *Cf. Hallman*, 159 S.W.3d at 645 ("[A]s numerous courts have recognized, the purpose of the business pursuits exclusion is to lower homeowners insurance premiums by removing coverage for activities that are not typically associated with the operation and maintenance of one's home. Commercial limestone mining is not an activity typically associated with owning and maintaining a home. Thus, the limestone mining lease at issue here is exactly the type of commercial enterprise that the business pursuits provision was designed to exclude.") (citations omitted).

—**Service**

Trevino, End Zone, and Whitfield further contend that the liquor liability exclusion does not apply because Wildcatter served Daniel and End Zone did not. The Court finds this argument unpersuasive in light of the relationships that Trevino has described in her pleading between End Zone, Wildcatter, and Whitfield and the fact that the promotional event at which Trevino was injured was intended to jointly promote End Zone and Wildcatter.

Trevino's state-court pleading alleges that Whitfield "managed [End Zone.]" (Dkt. 19-3 at p. 4). It is unclear whether Whitfield was a manager of the End Zone LLC or an employee with the title of manager at the time of Trevino's injury. Regardless, Whitfield

was an insured under the policy with respect to his duties as a manager or employee of End Zone. (Dkt. 1-2 at pp. 41–42). The policy's liquor liability exclusion covers all insureds if any insured "may be held liable by reason of" the conduct described in the exclusion. (Dkt. 1-2 at p. 52). Accordingly, the liquor liability exclusion covers both Whitfield and End Zone if Whitfield "may be held liable" in the state court suit for, while performing the duties of a manager or employee of End Zone, causing or contributing to Daniel's intoxication or furnishing alcoholic beverages to Daniel while Daniel was under the influence of alcohol. (Dkt. 1-2 at p. 52). *See TIG Specialty Insurance Co. v. PinkMonkey.com Inc.*, 375 F.3d 365, 371 (5th Cir. 2004) ("The exclusion does not require that the claim be based upon *the Insured, that Insured* or *such Insured* having gained a personal profit or gain, but based upon *an Insured* having gained a personal profit. . . . This indicates that coverage is excluded for all Insureds, not merely the Insured who profited.") (emphasis in *TIG*); *see also Coregis Insurance Co. v. Lyford*, 21 F. Supp. 2d 695, 698 (S.D. Tex. 1998) (cited in *TIG*) ("[T]he weight of precedent from other courts supports the position that policy exclusions concerning the acts of 'an' or 'any' insured, as opposed to exclusions concerning acts of 'the' insured, operate to bar coverage for all insured when one insured commits such an act.").

Trevino's state-court pleading further alleges that Whitfield "also managed and/or owned and controlled operations at [Wildcatter]"; that Whitfield organized the promotional event at which Trevino was injured and intended for the event to promote both End Zone and Wildcatter; and that Wildcatter "chose to have an 'open bar'" at the promotional event "so that people could drink for free." (Dkt. 19-3 at p. 4). Trevino further alleges that Daniel

"was among those who were drinking alcohol at the open bar during the event prior to operating the ATV" and that the ATV ride on which Trevino was injured was "part of the event's promotion of the two bars" and was set up by Whitfield and Daniel. (Dkt. 19-3 at pp. 4–5). Trevino contends in her state-court pleading that Whitfield and End Zone were negligent in, among other things, "failing to exercise the degree of care that would be exercised by a very cautious and prudent company under the same or similar circumstances; . . . allowing Travis Daniel to operate an ATV under the circumstances; . . . allowing the ATV driver and passengers to ride on the ATV under the circumstances; and . . . negligently entrusting the ATV to Daniel." (Dkt. 19-3 at pp. 6–7).

Considering the facts alleged by Trevino and the reasonable inferences that flow from those facts, Trevino's state-court pleading asserts that Whitfield, who owned and ran (or at least managed) Wildcatter, opened the Wildcatter bar for free drinks as part of a promotional event and furnished Daniel with alcohol before Daniel drove the ATV on which Trevino was riding when she was injured. Trevino's state-court pleading further asserts that Whitfield organized the promotional event and co-organized (with Daniel) the ATV ride to promote both Wildcatter and End Zone. In other words, Trevino's state-court pleading asserts that Whitfield, while performing duties associated with his position as a manager or employee of End Zone, helped cause Trevino's injuries by causing or contributing to Daniel's intoxication or furnishing alcoholic beverages to Daniel while Daniel was under the influence of alcohol.

The Court concludes that, under the facts alleged by Trevino and the reasonable inferences that flow from those facts, the liquor liability exclusion applies and Mesa does not owe Whitfield or End Zone a duty to defend under the policy.

### b. The duty to indemnify

However, on this record the Court cannot say that the same reasons that negate the duty to defend likewise negate any possibility that Mesa will ever have to indemnify Whitfield and End Zone in the state court suit. Accordingly, the question of whether Mesa has a duty to indemnify Whitfield and End Zone in the state court suit will be deferred until the conclusion of the state court suit.

The duty to indemnify "arises after an insured has been adjudicated, whether by judgment or settlement, to be legally responsible for damages in a lawsuit." *Collier v. Allstate County Mutual Insurance Co.*, 64 S.W.3d 54, 62 (Tex. App.—Fort Worth 2001, no pet.); *see also Reser v. State Farm Fire & Casualty Co.*, 981 S.W.2d 260, 263 (Tex. App.—San Antonio 1998, no pet.). Unlike the duty to defend, which is based on allegations, an insurer's duty to indemnify is based on "the actual facts that underlie the cause of action and result in liability." *Northfield Insurance Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528–29 (5th Cir. 2004) (quotation marks omitted). "[I]t may be necessary to defer resolution of indemnity issues until after the underlying third-party litigation is resolved because coverage may turn on facts actually proven in the underlying lawsuit." *D.R. Horton-Texas, Ltd. v. Markel International Insurance Co., Ltd.*, 300 S.W.3d 740, 745 (Tex. 2009).

The Texas Supreme Court has set out one circumstance under which the duty to indemnify is essentially decided by the eight-corners rule: "[T]he duty to indemnify is justiciable before the insured's liability is determined in the liability lawsuit when the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Farmers Texas County Mutual Insurance Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997) (emphasis removed). The principle articulated in *Griffin* applies if "under the facts pled by the plaintiffs [in the underlying lawsuit] it would have been impossible for the insured defendant to show by extrinsic evidence that the loss fell under the terms of the policy." *Burlington Northern and Santa Fe Railway Co. v. National Union Fire Insurance Co. of Pittsburgh, PA*, 334 S.W.3d 217, 220 (Tex. 2011).

Having reviewed the parties' briefing and the record, the Court is not convinced that this case falls within the scope of the *Griffin* doctrine. In *Griffin*, the underlying tort suit involved injuries caused by a drive-by shooting, and the insurance policy under which the defendant sought coverage was an automobile insurance policy. *Griffin*, 955 S.W.2d at 82. The Texas Supreme Court held that "[n]o facts c[ould] be developed in the underlying tort suit that c[ould] transform a drive-by shooting into an 'auto accident.'" *Id*. at 84. As a result, the same reasons that negated the duty to defend negated the duty to indemnify. *Id*. Subsequent Texas Supreme Court cases, however, have described *Griffin*'s resolution as a "fact-specific" holding that "cannot be construed so broadly" as to collapse the distinction between the two duties. *D.R. Horton*, 300 S.W.3d at 744–45 ("These duties are

independent, and the existence of one does not necessarily depend on the existence or proof of the other.").

Although the Court has concluded that Mesa does not have a duty to defend Whitfield and End Zone under the policy, the Court cannot say that it is impossible for extrinsic evidence to show that the ATV crash that injured Trevino falls under the policy's terms. Extrinsic evidence could, for instance, show that the relationships between End Zone; Wildcatter; Whitfield; Daniel; Trevino; and Whitfield & Pool, LLC—an entity whose connection to the incident is left unclear by Trevino's allegations—somehow bring Trevino's claims against Whitfield or End Zone within the scope of coverage. *See, e.g., id*. ("[E]ven if Markel has no duty to defend D.R. Horton, it may still have a duty to indemnify D.R. Horton as an additional insured under Ramirez's CGL insurance policy."). The Court will accordingly defer resolution of the indemnity issues until the state court suit is resolved.

## IV.     CONCLUSION

Trevino's motion for summary judgment (Dkt. 21) is **DENIED**. Mesa's motion for summary judgment (Dkt. 18) is **GRANTED** as to the duty to defend and **DENIED** as to the duty to indemnify. This case is **STAYED** and **ADMINISTRATIVELY CLOSED** until final judgment is entered in the state court suit. At that time, the parties may reurge their motions on the duty to indemnify.

SIGNED at Houston, Texas, on March 30, 2023.

*George C. Hanks Jr.*
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE